BREDEWEG *v.* FIRST STATE BANK OF HOLLAND.

1. WORKMEN'S COMPENSATION—NATURE OF RELATION BETWEEN PARTIES UNDER ACT.

By virtue of being under the workmen's compensation act, relation between banks, as employers, their employees and the State is a contractual one.

2. BANKS AND BANKING—RECEIVERS—CONSERVATORS—APPOINTMENT.

Receivers and conservators of banks do not, *ipso facto*, by their appointment become bound by, or entitled to the benefits of, all contracts made by the debtor.

3. WORKMEN'S COMPENSATION—BANK RECEIVERS AND CONSERVATORS —ADOPTION OF COMPENSATION CONTRACTS.

Receivers and conservators of banks who fail to give notice of a contrary intention within a reasonable time after their appointment are deemed to have adopted the workmen's compensation contracts of banks in charge of whose assets they have been placed.

4. SAME—BANK RECEIVERS AND CONSERVATORS—ADOPTION OF COMPENSATION CONTRACTS.

Receiver of bank who paid renewal premium on workmen's compensation insurance as to bank's employees would not thereby bind officers in charge of two other banks as to compensation for injuries sustained by their coemployee, a watchman at factory on which the three banks jointly held a mortgage, yet by lapse of five or six weeks without voicing a contrary intention, conservators of latter banks are likewise deemed to have adopted workmen's compensation contracts.

5. SAME—INJURY TO EMPLOYEE OF BANK IN CHARGE OF CUSTODIAN— RETURN OF ASSETS TO BANK.

Property of three banks to which receiver and conservators returned assets upon their discharges as such officers *held*, liable for workmen's compensation to watchman employed by them to look after a furniture factory on which banks held a joint mortgage, since liability for torts of such custodians follows corpus into hands of new custodian.

WIEST, SHARPE, and CHANDLER, JJ., dissenting.

Appeal from Department of Labor and Industry. Submitted June 10, 1936. Reargued April 7, 1937. (June Term, 1936, Docket No. 18, April Term, 1937, Docket No. 1, Calendar No. 38,907.) Decided June 7, 1937.

John Bredeweg presented his claim against First State Bank of Holland, Peoples State Bank and Holland City State Bank, employers, and Travelers Insurance Company, London Guarantee & Accident Co., Ltd., and Fidelity & Casualty Company of New York, insurers, for compensation for accidental injuries suffered in defendants' employ. Award to plaintiff. Defendants appeal. Affirmed.

*J. Thomas Mahan,* for plaintiff.

*Alexander, McCaslin & Cholette,* for defendants.

BUTZEL, J. The three banks had all elected to come under the workmen's compensation act. (2 Comp. Laws 1929, §§ 8407–8485, as amended.) In January, 1932, a receiver was appointed by the circuit court for the county of Ottawa for the Peoples State Bank. The three banks held a joint mortgage on the property of the Ottawa Furniture Company. Plaintiff had previously been employed by the furniture company as a watchman, and as the banks needed someone to look after their security, plaintiff was employed by the three banks, the Peoples State Bank at the time being in the hands of a receiver. About 60 days later conservators were appointed by the State banking commissioner for the First State Bank and the Holland City State Bank. Plaintiff's employment was continued. While the opinion of the department states that the conservators were appointed in February, 1933, the record

indicates that they were appointed in the early part of March.

The accident occurred on April 15, 1933, apparently five or six weeks after the conservators had been appointed. The accident happened out of and in the course of the plaintiff's employment. When the receiver and conservators were appointed to take over the affairs of the respective banks, no steps were taken to file a formal election to come under the workmen's compensation act. However, the receiver of the Peoples State Bank paid for renewal of the workmen's compensation insurance and apparently considered himself under the act.

Prior to the appointment of the receiver and conservators, the relation created between the banks, their employees and the State, by virtue of being under the workmen's compensation act, was a contractual one. It is true that the receiver and conservators did not, *ipso facto,* by their appointment become bound by, or entitled to the benefits of, all contracts made by the debtor. However, when a receiver or conservators take over the management of banks, retaining employees of the debtor banks to aid them in the proper performance of their duties, and fail, within a reasonable time after their appointment, to give notice of a contrary intention, they are deemed to have adopted the workmen's compensation contracts of the debtor banks. The situation is analogous to a receiver's adoption of a lease or other contract of the debtor, the benefits of which he accepts in administering his trust. While the payment of the insurance premium by the receiver Jalving, manifesting an affirmative adoption of the workmen's compensation contract, would not bind the officers in charge of the First State Bank and the Holland City State Bank, the conservators

of the latter banks, after the lapse of some five or six weeks, without voicing a contrary intent, are likewise deemed to have adopted the workmen's compensation contracts.

In *Link Belt Machinery Co.* v. *Hughes,* 174 Ill. 155 (51 N. E. 179), the court stated:

"No express declaration by the receiver to the landlord of his intention or election to abide by or carry out the terms of the lease or contract of his insolvent is necessary. It may be done by acts, by continuing in possession of the premises and for a time paying the rent provided for in the lease, * * * or by a failure to make other and different arrangements with the landlord on the question of amount or terms of the lease."

Again in *Landon* v. *Public Utilities Commission of Kansas,* 245 Fed. 950:

"There never has been any formal adoption by the receiver of these supply contracts. In such case it is not the law that a contract shall be binding upon the receiver until it is disavowed by him, but the law is that it is not binding upon the receiver until it is accepted by him; and * * * ordinarily the law requires the receiver to indicate within a reasonable time whether or not he will accept a contract."

It is entirely within the spirit of the act that such receiver and conservators remained liable under the act until they withdrew as they had a right to do under 2 Comp. Laws 1929, § 8412. Undoubtedly, the employees had a right to believe that they were being protected under the act and the liability was thus created.

Inasmuch as the accident occurred while the banks were in the hands of a receiver and conservators, the further question arises whether the banks

after the return of the corpus or assets, remained liable for an unpaid claim which arose during the receivership.

In *Bartlett* v. *Cicero Light, Heat & Power Co.,* 177 Ill. 68 (52 N. E. 339, 42 L. R. A. 715, 69 Am. St. Rep. 206), the court said:

"The main question, presented by the demurrer to the amended declaration in the present case, is this: Where a corporation has been placed in the hands of a receiver, and an injury or death has been caused by the negligence of the receiver while he is operating the property of the corporation; and where, by stipulation between the parties, the receiver is discharged, and the property is restored to the possession of the corporation, can the corporation itself be held liable for damages for the injury so received during the receivership? * * *

"The receivers in such cases are not personally liable upon their discharge for claims of this character, but the claims follow the property or fund which alone can be used to satisfy them. * * * Not merely claims arising out of contract, but claims for torts, arising through the negligence of the receivers or their subordinates, thus follow the property or fund.

"In the case at bar, if the plaintiff has no remedy for the death of his intestate against the company, then he has no remedy at all, inasmuch as the receiver, during whose administration the death occurred, has been discharged from his office, and cannot be held personally liable."

In that case the court further quoted as follows from 5 Thompson's Commentaries on the Law of Corporations, § 7151:

"The receiver becomes the new custodian of a property which was before, in a sense, a trust prop-

erty in the hands of the corporation. In the management of this trust property negligences are committed by his servants, for which, under the settled principles of law, the receiver is liable,—not personally, except where he has been guilty of personal fault,—but out of the trust funds in his hands. The liability is then essentially a liability of the fund, and not of the custodian. When, therefore, the fund is transferred to a new trustee, whether it be to a new and reorganized corporation created by the purchasers at a mortgage sale, * * * or whether it be the original corporation, its former owner, to whom it is redelivered under a new management, it is the case of a trust property, to which a liability has attached, passing into the hands of a new trustee. The trust property continues liable; but from the very nature of the case, any action brought to charge it must, if the receiver has been discharged prior to the bringing of the action, be brought against the corporation which is its custodian,— that is to say, against the new trustee."

The rule is recognized in an annotation in L. R. A. 1918F, p. 320, as follows:

"As a general rule, a corporation, while its property is in the hands of a receiver, has no control over either the receiver or his servants, and therefore, in the absence of any liability imposed by statute, or of an agreement to assume liability, is not personally responsible for the negligence or wilful torts of the employees of the receiver; although, as will presently be explained, its property may be chargeable with the amount of the damages thereby occasioned."

Also, see, *Ryan* v. *Hays*, (1884) 62 Tex. 42.

The award is affirmed, with costs to appellee.

NORTH, BUSHNELL, and POTTER, JJ., concurred with BUTZEL, J. FEAD, C. J., concurred in the result.

SHARPE, J. (*dissenting*).  Plaintiff filed a claim for compensation for disability suffered from an accident on April 15, 1933.  The deputy commissioner made an award in plaintiff's favor which was affirmed by the department and from which defendants appeal.

In January, 1932, a receiver was appointed for the Peoples State Bank; in February or March, 1933, the State banking department appointed a conservator for the First State Bank; and in March, 1933, a conservator was appointed for the Holland City State Bank.  Prior to and during the time the three banks were in the hands of a conservator or receiver, they were joint mortgagees of the Ottawa Furniture Company; and in order to protect their interests, authorized one Vander Meulen, cashier of the First State Bank, to hire a watchman.  Plaintiff was hired as a watchman and during the course of his employment suffered an injury.  A report of the accident was made to Vander Meulen who at the time was employed by the receiver of the First State Bank.  No report of the accident was filed with the department of labor and industry.

Prior to the appointment of the receiver and conservators, all of the above banks had elected to come under the workmen's compensation act.  After the appointment of the conservators and receiver no change was made in the insurance set up except that one bank paid the insurance premiums for compensation insurance and one other bank had premiums paid just before the conservator was appointed.  Neither of the conservators or the receiver filed his intention of coming under the compensation act, nor were the acceptance records by the banks withdrawn.  At the time that plaintiff filed his petition for a hearing before the department of labor and

industry, the receiver and conservators had been discharged and the banks were again doing business under the authority of the corporate powers that they severally had before.

It is contended by the plaintiff that the banks had contracted to come under the compensation act by filing their elections and that after the appointment of the receiver and conservators no steps were taken to terminate the arrangement regarding compensation for employees of the bank. The defendants claim that at the time of the injury to plaintiff, he (plaintiff) was employed by an entirely separate and distinct entity, namely, the receiver and conservators of the banks who had never elected to come under the provisions of the compensation act.

The relationship of the parties at the time of the accident governs the applicability of the compensation law. *Shevchenko* v. *Railway Co.,* 189 Mich. 421; *Thorpe* v. *Department of Labor and Industries,* 145 Wash. 498 (261 Pac. 85); *Sheldon* v. *Department of Labor and Industries,* 168 Wash. 571 (12 Pac. [2d] 751); *Gleason's Case,* 269 Mass. 583 (169 N. E. 409).

"Persons engaged or retained by the receiver to assist him are his agents or employees, and not those of the owner of the property of which he is receiver, nor of the court; their acts and knowledge are imputable to the receiver, and contracts made by them are binding upon him." 53 C. J. p. 169.

In the case of contracts terminable at will, a receivership terminates the old relations between the insolvent employer and the employee because of the inability of the insolvent employer to perform. 1 Clark, Receivers, 580 *et seq.*

In *Anderson* v. *Polleys*, 53 R. I. 182 (165 Atl. 436), the court said:

"If the contract of employment—as that in the case at bar—is for an indefinite time, it may be terminated by mutual agreement or by consent, express or implied or by either party at will."

In the instant case, plaintiff was paid by the day; it was such a contract as terminated upon the appointment of the conservators and receiver and from the date of such appointment. Plaintiff was in the employ of the conservators and receiver and not the defendant banks.

In *Unrine* v. *Railroad Co.*, 104 Kan. 236 (178 Pac. 614), Justice Burch, speaking for the court said:

"When the receivers took charge of the property and affairs of the railroad company, they did so as appointees and agents of the court instituting the receivership, and not as appointees and agents of the corporation. Contracts between the corporation and employees who were retained in service by the receivers were terminated, and such employees became employees of the receivers. (*Chilletti* v. *Railway Co.*, 102 Kan. 297 [171 Pac. 14, L. R. A. 1918C, 1147])."

The compensation act is statutory and provides that employers shall not come under the act unless they make an election to do so. In *Lester* v. *Auto Haulaway Co.*, 260 Mich. 16, we said:

" 'Acceptance' of the act by the employer, approved by the department, is an indispensable requisite to his operating under it."

Section 8412, 2 Comp. Laws 1929, provides that:

"Such election on the part of the employers mentioned in subdivision two of the preceding section,

shall be made by filing with the industrial accident board † * * * a written statement. * * * The filing of such statement and the approval of said board † shall operate within the meaning of the preceding section, to subject such employer to the provisions of this act and all acts amendatory thereof for the term of one year from the date of the filing of such statement and thereafter, without further act on his part, for successive terms of one year each, unless such employer shall, at least 30 days prior to the expiration of such first or any succeeding year, file in the office of said board † a notice in writing to the effect that he desires to withdraw his election to be subject to the provisions of this act.''

Nor is notice to the employee, actual or by posting, an essential factor of withdrawal from the act. *Lester* v. *Auto Haulaway Co., supra.*

The plaintiff, at the time of his accident and injury, being in the employ of the receiver and conservators and they having failed to file an election with the department of labor and industry to come under the act, is precluded from recovery.

The award of the department of labor and industry should be vacated; defendants should recover costs.

CHANDLER, J., concurred with SHARPE, J.

WIEST, J. (*dissenting*). A receiver acts as an arm of the court and the property in his hands is *in custodia legis.*

A receiver may employ caretakers and watchmen for the preservation of the property.

Employees of a corporation, continued in employment by the receiver, are employees of the receiver and may not, if injured in the course of such em-

---

† The powers and duties of the industrial accident board have been transferred to the department of labor and industry and the board abolished. See 2 Comp. Laws 1929, § 8312.—REPORTER.

ployment by the receiver, look to the corporation for compensation either during the continuance or after the ending of the receivership.

The compensation act requires the relation of employer and employee. During receivership there is not and cannot be any such relation between employees serving the receiver and the corporation. During such period the service is single and cannot subsequently be held otherwise.

The compensation statute fails to provide for the remedy applied by Mr. Justice BUTZEL and, as that statute has no common-law background and equitable rules are not permissible to supply the deficiency of the statute, there can be no such recovery.

I, therefore, concur in the result reached by Mr. Justice SHARPE.